Kristin Kalani, SBN 030240
Erin Rose Ronstadt, SBN 028362
OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745
(602) 761-4443 Fax
kristin@oberpekas.com
erin@oberpekas.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Kukula, a married man,<br><br>                  Plaintiff,<br><br>v.<br><br>B/E Aerospace, Inc. Employee Benefit Plan, an ERISA benefit plan; B/E Aerospace, Inc. Benefits Committee, an ERISA plan administrator; and The Prudential Insurance Company of America, a plan fiduciary;<br><br>                Defendants. | **No.**<br><br><br>**COMPLAINT** |

For his claims against Defendant B/E Aerospace, Inc. Employee Benefit Plan (the "Plan"), Defendant B/E Aerospace, Inc. Benefits Committee ("the "Committee") and Defendant the Prudential Insurance Company of America ("Prudential") (collectively "Defendants"), Plaintiff James Kukula ("Plaintiff" or "Mr. Kukula") alleges as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.     This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.     B/E Aerospace, Inc. (B/E Aerospace) is the Employer and Plan Sponsor of the Plan.

3.     The Plan and B/E Aerospace, a large corporation, have their principal place of business in the state of Florida. Prudential has its principal place of business in

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

the state of New Jersey. Defendants Prudential and B/E Aerospace are licensed and authorized to do business in Pima County, Arizona, and reside and are found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

4.      The Plan is a single-employer welfare benefit plan under ERISA and is maintained for the exclusive benefit of eligible employees of B/E Aerospace. The Plan provides a comprehensive selection of employee welfare benefit programs (the "Programs") including but not limited to, medical, dental, vision, life, short-term disability ("STD"), and long-term disability ("LTD"), and accidental death and dismemberment.

5.      As the Plan Administrator, the Committee has the authority to control and manage the operation and administration of the Plan and the various Programs.

6.      Mr. Kukula is informed and believes that the Committee is a named fiduciary of the Plan pursuant to 29 U.S.C. § 1133(2).

7.      B/E Aerospace and the Committee administered the Plan to its employees, including Mr. Kukula.

8.      Mr. Kukula is a participant and beneficiary of the Plan by virtue of his employment with B/E Aerospace.

9.      Mr. Kukula is a married person. He resides in Tucson, Arizona.

10.     Prudential is a licensed insurance company authorized to underwrite group LTD policies in Arizona.

11.     Mr. Kukula is informed and believes that Prudential is either a "named fiduciary" of the Plan pursuant to 29 U.S.C. § 1133(2); a "deemed fiduciary" pursuant to 29 U.S.C. § 1002 (21)(A); or a "designated fiduciary" pursuant to 29 U.S.C. § 1105(c)(1)(B).

12.     Prudential had actual or apparent authority to act as a fiduciary on behalf of the Plan.

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

13.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

## GENERAL ALLEGATIONS

14.     All previous and succeeding paragraphs are incorporated by reference.

### *Plan Structure*

15.     The Plan was established May 1, 1989. It was amended and restated January 1, 2007.

16.     Under the Plan, B/E Aerospace sponsors various benefit Programs for the exclusive benefit of its employees, including the B/E Aerospace, Inc. Short Term Disability Program (the "STD Program") and the B/E Aerospace Long Term Disability Program (the "LTD Program").

17.     The Committee serves as the Plan Administrator of the Plan and is a named fiduciary of the Plan and its Programs.

18.     As the Plan Administrator, the Committee has discretionary authority to construe and interpret the Plan and the Programs, including, without limitation, determining an employee's eligibility to participate in and receive benefits under one or more of the Programs. In this capacity, the Committee has the authority to decide any matter and may adopt any rule or procedure regarding eligibility, benefits, claims or any other issue arising under the Plan that is necessary, desirable or appropriate in the administration of the Plan and the Programs, including factual determinations.

19.     The Committee may allocate or delegate any responsibility regarding the Plan and the Programs among one or more persons. Such allocation or designation must be in writing and in the record of the Plan. It must also identify the person or persons to whom responsibility is delegated and the nature and scope of that responsibility.

20.     On information and belief, Prudential fully insures claims under the LTD Program but serves as the claims administrator for the self-funded STD Program.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21.     On information and belief, the STD Program is self-funded by B/E Aerospace. Because it is a self-funded program, liability for the payment of claims resides with B/E Aerospace.

22.     On information and belief, the LTD Program is fully insured by a group disability insurance contract with Prudential. In exchange for premiums under group policy number G-45291-FL (the "Policy"), Prudential agreed to fully insure all LTD claims under the LTD Program and to assume financial liability for said claims. Mr. Kukula is informed and believes that Prudential continues to insure LTD claims under the LTD Program.

23.     On information and belief, B/E Aerospace entered into separate contracts with Prudential to administer the STD Program and to insure the LTD Program.

24.     With respect to the STD Program, Prudential agreed to render administrative services to B/E Aerospace beginning August 1, 2007 under Administrative Services Agreement No. 45291 (the "Service Agreement").

25.     Under the Service Agreement, Prudential provides administrative services to B/E Aerospace for the STD Program in exchange for a monthly service fee. Among the contracted services, Prudential accepts and processes claims. It also makes eligibility determinations and assists B/E Aerospace in determining the "***the duration of benefits, if any, for each such claim received***." (emphasis added) In connection with these determinations, Prudential provides ongoing claims management. It communicates claim approvals and denials to participants. While B/E Aerospace makes the final claim determinations on appeal, Prudential provides "advice and assistance to [B/E Aerospace] in reviewing all appeals."

26.     Under the Service Agreement, Prudential also provides other optional services to B/E Aerospace including, but not limited to, cost and experience analysis and plan design.

-4-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

27.    In exchange for these services, Prudential receives a monthly service fee of $2.15 per employee/month.

28.    Mr. Kukula is informed and believes that Prudential received significant fees for its administrative services to the STD Program and premiums for the Policy. For instance in the 2013 plan year, Mr. Kukula is informed and believes that Prudential received approximately $3,099,730.00 in service fees and premiums from B/E Aerospace.

29.    Under this structure, Prudential is positioned to reap monthly administrative fees, to deny and/or terminate STD claims, and to avoid liability on the LTD claims that it insures all while continuing to receive premiums from B/E Aerospace for LTD coverage.

### Criteria for STD and LTD Benefits

30.    To qualify for STD benefits, Mr. Kukula must satisfy the definition of Disability under the STD Program. Mr. Kukula is Disabled if he is "unable to perform the material and substantial duties of [his] regular occupation due to sickness or injury," is "under the regular care of a doctor," and has "a 20% or more loss in weekly earnings due to [his] sickness."

31.    Mr. Kukula's regular occupation is the "occupation [he was] routinely performing when [his] disability beg[an]." The Plan required Prudential and B/E Aerospace to look at his occupation "as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

32.    The material and substantial duties of Mr. Kukula's regular occupation are those that "are normally required for the performance of [his] regular occupation," and "cannot be reasonably omitted or modified."

33.    Mr. Kukula was entitled to receive STD benefits for 26 weeks or until he was no longer Disabled under the terms of the STD Program.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

34.     To qualify for benefits under the LTD Program, Mr. Kukula had to satisfy the definition of "Disability" under the Plan and had to be continuously Disabled throughout and beyond the "Elimination Period." The Elimination Period is 180 days from Mr. Kukula's date of disability.

35.     Under the LTD Program, the definition of Disability is nearly identical to the definition required under the STD Program. Under the terms of the Plan, Mr. Kukula is considered Disabled if he is "unable to perform the material and substantial duties of [his] regular occupation due to sickness or injury," is "under the regular care of a doctor," and "after the first twelve months of [his] disability, [he] ha[s] a 20% or more loss in [his] monthly earnings due to [his] sickness."

36.     Should Mr. Kukula remain continuously Disabled, he would potentially be entitled to receive LTD benefits through his Social Security Normal Retirement Age ("SSNRA"), which is 66 years and four (4) months or until October 10, 2022.

37.     The LTD Program provides 60% of Mr. Kukula's Monthly Earnings. Mr. Kukula's Monthly Earnings are his gross monthly income from B/E Aerospace prior to his date of disability, and includes commissions and bonuses. Any commissions and bonuses are averaged over the 12 months immediately preceding his Disability.

38.     While the Plan has exclusions and limitations for certain disabilities, it does not have an exclusion or limitation for self-reported symptoms. Prudential confirmed this in an Eligibility Review dated March 27, 2014.

### *Mr. Kukula's Claims for STD and LTD Benefits*

39.     Mr. Kukula began working for B/E Aerospace on or about January 11, 2011. As of his last day worked on October 30, 2013, Mr. Kukula worked as a Product Support Engineer earning approximately $72,000.00 annually. Prior to that, he had worked for Raytheon Missile Systems as a Principal Logistics Specialist and for General Motors as an Advanced Vehicle Engineer for over 32 years. Prior to his Disability, Mr. Kukula had an uninterrupted work history spanning over 43 years.

-6-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40.     As a Product Support Engineer for B/E Aerospace, Mr. Kukula provided product and technical support for aircraft cabin interior products. He provided technical instructions regarding product usage, performance and troubleshooting, and repair and maintenance. He resolved product problems, communicated directly with customers, and provided onsite training and engineering changes. His engineering assignments involved equipment or product design, the testing of materials, preparation of specifications, process studies, and research investigations.

41.     The demands of Mr. Kukula's regular occupation were considerable and included the following cognitive and physical abilities: the ability to read, analyze and interpret general business periodicals, professional journals, technical procedures, or governmental regulations; the ability to write reports, business correspondence, and procedure manuals; the ability to effectively present information and respond to questions from groups of managers, associates, clients, customers, and the general public; the ability to apply advanced mathematical concepts such as exponents, logarithms, quadratic equations, and permutations; the ability to apply mathematical operations to such tasks as frequency distribution, determination of test reliability and validity, analysis of variance, correlation techniques, sampling theory, and factor analysis; the ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists; the ability to interpret a variety of instructions in written, oral, diagram, or schedule form; the ability to sit, use hands to handle or feel, talk and hear regularly; the ability to stand, walk, reach, stoop, kneel, crouch, and crawl occasionally; the ability to lift and/or move up to 25 pounds occasionally; and the ability to work in an environment with "moderate" noise levels.

42.     By the end of his active employment in 2013, Mr. Kukula's medical conditions interfered with his ability to perform his job effectively. Mr. Kukula worked until he could no longer do so and sought STD benefits under the STD Program based on his inability to work.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

43.     In a letter dated December 6, 2013, Prudential approved Mr. Kukula's STD claim from November 7, 2013 through January 12, 2014. B/E Aerospace was notified of the approval.

44.     As a result of subsequent reviews, Prudential extended Mr. Kukula's STD benefits through February 5, 2014.

45.     In a letter dated March 24, 2014, Prudential notified Mr. Kukula that the STD Program would only provide benefits through April 30, 2014. In light of this date, Prudential advised Mr. Kukula that it was requesting additional information to determine his eligibility for LTD benefits. Mr. Kukula's LTD benefits would have become payable as of April 29, 2014.

46.     During a "Claim Discussion" on March 31, 2014, Prudential designated Mr. Kukula's claim as "Flight Path: 4" claim.

47.     In a letter dated April 3, 2014, Prudential advised Mr. Kukula that his STD benefits had been extended through April 6, 2014.

48.     In a decision dated June 2, 2014, Prudential terminated Mr. Kukula's STD claim effective April 7, 2014 and denied his claim for LTD benefits (the "First Denial"). Prudential concluded that based on its review of the file, it did not "find support for medically based restrictions or limitations for any condition." Prudential reasoned that because Mr. Kukula had reported the ability to drive, his "self-reported complaints of forgetfulness and impaired concentration [was] not sufficient enough so as to preclude [him] from all activities."

49.     Prudential notified B/E Aerospace of the First Denial in a letter dated June 11, 2014.

50.     In a letter dated July 8, 2014, Mr. Kukula timely appealed the First Denial (the "First Appeal").

51.     Mr. Kukula's First Appeal was assigned to Senior Appeals Analyst, Angelica Billines.

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

52.     On or about August 7, 2014, Ms. Billines referred Mr. Kukula's claim for an "independent file review." The file review was coordinated through University Disability Consortium ("UDC"). In the referral instructions to UDC, Ms. Billines requested that UDC assign the review to a physician with an Occupational Medicine background. Ms. Billines also requested that the physician reviewer respond to an enumerated set of questions. Ms. Billines directed the physician reviewer to consider and respond to Prudential's prior clinical reviews, instructing:

> Please reference the clinical assessment(s) in file completed by Susan Pack, RN on May 28, 2104 [sic]. Please provide a detailed explanation as to why your opinion is the same or differs from this prior clinical assessment. Please point to the specific documentation that supports your response.

53.     With the referral to UDC, Ms. Billines provided all of Prudential's internal "SOAP notes," including those leading up to and which formed the basis for Prudential's First Denial.

54.     UDC assigned the review to Dr. Garson Caruso, who has board certification in Occupational Medicine. In his Curriculum Vitae, Dr. Caruso represents himself as an "[i]ndependent physician consultant providing guidance, leadership and services focused on Work Disability Prevention and Management." His experience at the time, included providing medical consultation to AmTrust North America on 700 workers compensation cases annually and also to CorVel Corporation on complex workers compensation claims. His experience also included file reviews for STD and LTD claims.

55.     Dr. Caruso completed a medical file review on August 20, 2014 (the Report"). Without having evaluated Mr. Kukula in-person or reaching out to his treating providers, Dr. Caruso opined that Mr. Kukula did not have any significant capacity limitations or need for work restrictions from a physical or psychological basis. Dr. Caruso faulted Mr. Kukula for not having objective findings, stating:

-9-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

Dr. Mecikalski's stated limitations and restrictions appeared to be based on Mr. Kukula's subjective assertions and not on the doctor's semi-objective and objective findings, which, as documented above, were largely unremarkable.

56.     Dr. Caruso agreed with the prior clinical review completed by Ms. Pack.

57.     In an invoice dated August 21, 2014, UDC invoiced Prudential for Dr. Caruso's Report. At a rate of $280.00 per hour, the final invoice was for $1,190.00.

58.     In a decision dated August 21, 2014, Prudential affirmed and upheld its prior decision to terminate Mr. Kukula's claim for STD benefits effective April 7, 2014, and to disallow his claim for LTD benefits effective April 29, 2014 (the "Second Denial"). The Second Denial was premised on Mr. Kukula's purported failure to satisfy the 180-day elimination period of continuous disability. Prudential relied exclusively on Dr. Caruso's Report.

59.     The Second Denial was communicated to B/E Aerospace in a letter dated August 21, 2014.

60.     The Second Denial did not comport with the notice requirements under ERISA. ERISA requires a "meaningful dialogue" between a claims administrator and a beneficiary. Under 29 C.F.R. § 2560.503(g)(iii), when a plan administrator denies a claim, the notification must provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." It must also be relayed in a manner calculated to be understood by the claimant. Prudential failed to identify what was needed for Mr. Kukula to perfect his claims under the STD and LTD Programs.

61.     Although Mr. Kukula had exhausted his administrative remedies and had the option to sue, the Second Denial outlined a second, voluntary appeals process. The Second Denial advised that his decision to file a second appeal would not affect his rights to sue under ERISA. Mr. Kukula was instructed to submit the voluntary appeal to Ms. Billines.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

62.     With the assistance of counsel, Mr. Kukula requested all relevant information under ERISA as it pertained to both his STD and LTD claims under the Plan. This request was made in writing in a letter dated December 3, 2014.

63.     Accompanying a letter dated December 4, 2014, Prudential provided all documentation, which it asserted, was relevant to Mr. Kukula's claim. Prudential did not explain the Flight Path designation. Prudential clarified Mr. Kukula's second, voluntary appeal deadline as March 2, 2015.

64.     On March 2, 2015, Mr. Kukula submitted his second, voluntary appeal (the "Second Appeal"). He submitted his Second Appeal to Prudential and to B/E Aerospace in its capacity as the Plan Administrator. With his Second Appeal, Mr. Kukula provided new and additional documentation in support of his claims. Among the supplemental disclosures submitted on appeal, he provided disclosures from B/E Aerospace relating to the Plan, various functionality assessments completed by his treating physician, updated medical records, headache logs substantiating the nature, severity and duration of his headaches, medical literature regarding his conditions, and information related to his regular occupation as a Product Support Engineer, including information from the U.S. Bureau of Labor and the Occupational Information Network ("O*NET"). With his Second Appeal, Mr. Kukula objected to Dr. Caruso's Report and Prudential's exclusive reliance on the Report.

65.     Ms. Billines confirmed receipt of Mr. Kukula's Second Appeal in a letter dated March 9, 2015. She advised that she anticipated making a determination by April 15, 2015. This deadline coincided with the initial forty-five (45) day review deadline under ERISA.

66.     During the time Mr. Kukula's Second Appeal was pending, his contractual period of limitations was tolled under ERISA. Under 29 C.F.R. 2560.503-1(d),"[t]he claims procedures of a plan that provides disability benefits will be deemed to be reasonable only if the claims procedures comply, with respect to claims for disability

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

benefits, with the requirements (b), (c)(2),(c)(3), and (c)(4) of this section." Under section (c)(3), claims procedures will only be considered reasonable if, "[t]he plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that any such voluntary appeal is pending."

67.     Despite Mr. Kukula's arguments against Dr. Caruso, on or about March 16, 2015, Ms. Billines referred Mr. Kukula's claim back to Dr. Caruso for an "addendum review." In her referral instructions to UDC and to Dr. Caruso, Ms. Billines requested that his addendum report be returned to her no later than five (5) business days.

68.     In a report dated March 30, 2015, Dr. Caruso completed his Medical Record Review Addendum (the "Addendum"). Dr. Caruso summarized the medical evidence, including the new evidence provided with Mr. Kukula's Second Appeal. He noted that a provider had opined that Mr. Kukula's headaches "where multifactorial, with both tension and migraine characteristics and probable contributions from sleep apnea and occipital neuralgia." Dr. Caruso also noted Mr. Kukula's exam findings of occipital tenderness and subdued reflexes and his intolerance to Topamax. He also discussed the recommendation for a trial of Botox injections, which was provided by Mr. Kukula's treating provider, in an office visit on January 15, 2015.

69.     Despite all of these findings, Dr. Caruso maintained his position that Mr. Kukula was not disabled. Again, he faulted Mr. Kukula for not providing "objective" proof of his disability, providing, "[t]he additional supplied medical information did not *objectively* report significant functional capacity limitation or medical indication for work restriction." (emphasis added)  In considering the opinions of Mr. Kukula's treating providers, Dr. Caruso concluded that their restrictions and limitations were "excessive," and not "medically indicated." Dr. Caruso faulted Mr. Kukula's treating providers stating that they "excessively relied upon the claimant's self reported symptoms."

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

70.     Dr. Caruso's Addendum is replete with internal inconsistencies. As a basis for his opinion, he cited to the lack of objective evidence, yet stated, "[o]bviously there are *few if any objective manifestations of headache*." (emphasis added) Ironically, he also cited to the "Risk-Capacity Tolerance" paradigm to support his opinion that Mr. Kukula did not have functional impairments. With respect to tolerance, Dr. Caruso stated, "[c]hronic headache is a difficult problem in occupational medicine," in part, because "[t]here is *no objective way* for a physician to determine, and thus certify, that a given headache is severe enough to justify missing work on a given day." (emphasis added)

71.     Dr. Caruso also addressed the January 28, 2015 Headache Residual Functional Capacity completed by Mr. Kukula's treating provider. He summarized the restrictions and limitations set forth by Mr. Kukula's provider, which noted bilateral headaches occurring twenty (20) times monthly and associated symptoms of inability to concentrate, nausea and vomited, photosensitivity, vertigo and visual disturbances. He noted that the provider has found Mr. Kukula's headache symptoms to be "credible," and that "reduced light and noise levels" were required. Dr. Caruso responded that the "'[need] to operate with reduced noise and light levels' did not relate to capacity limitations or risk (necessitating activity restrictions), but was more likely a function of tolerance, which [was] not a medical determination."

72.     In his Addendum, Dr. Caruso also concluded that Mr. Kukula's providers had not "recorded mental status alterations or substantial medication side effects in the newly reviewed records." However, this is belied and contradicted by previous findings in his Addendum, which acknowledged Mr. Kukula's intolerance to various medications, including Topamax.

73.     Dr. Caruso also responded to points raised by Mr. Kukula's attorney in his Second Appeal, specifically with respect to his biased review. Dr. Caruso defended his previous Report, stating, "[i]n complex cases such as the present one, an experienced

-13-

occupational physician can provide expertise on appropriate activity limitations and restrictions." This "capability [was] based upon specialized training and experience analogous to that of other medical specialties, with a unique focus which is not possessed by most primary care and non-occupational specialist practitioners." Dr. Caruso further stated, "[t]he *ultimate goal* of the conscientious reviewer in these cases is not claim denial per se, but rather *prevention of unnecessary work disability*, which is an undesirable occurrence for all stakeholders…" (emphasis added)

74.     In an invoice dated March 30, 2015, UDC billed Prudential $2,408.00 for Dr. Caruso's Addendum.

75.     Overall, Prudential paid UDC and/or Dr. Caruso $3,598.00 in fees for his Report and Addendum.

76.     Despite having the Addendum by March 30, 2015, Ms. Billines advised in a letter dated April 15, 2015, that she would require another forty-five (45) days or until May 30, 2015 to evaluate Mr. Kukula's Second Appeal. Mr. Kukula did not receive this letter until April 20, 2015.

77.     The April 15, 2015 letter did not comport with the notice extension requirements under ERISA. Under 29 C.F.R. § 2560.503-1, the notice should have been furnished to Mr. Kukula *prior to* the expiration of the initial 45-day review period. The notice also needed to indicate the "special circumstances" requiring the extension. No explanation was provided to Mr. Kukula other than a generic statement that the "extension was required to allow for finalization of a determination of [his] claims."

78.     In a letter dated April 16, 2015, Ms. Billines affirmed and upheld the prior decision to deny Mr. Kukula's LTD benefits (the Final Denial"). Prudential denied Mr. Kukula's LTD claim again for his purported failure to satisfy the requisite elimination period, stating in relevant part:

> As a result, we have upheld our decision to disallow Mr. Kukula's claim for LTD benefits effective April 29, 2014 as he has not satisfied the 180 day elimination period of continuous disability, defined above.

-14-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

79.    In the Final Denial, Prudential advised Mr. Kukula that he would receive "separate correspondence regarding [his] claim for STD benefits."

80.    On the same day of the Final Denial, Ms. Billines emailed Sherri Sealey at B/E Aerospace and provided her with Prudential's Appeal Recommendation (the "Recommendation") for Mr. Kukula's STD claim. Based on her review of the medical evidence, Ms. Billines recommended that the prior decision to terminate benefits be upheld. Ms. Billines requested that B/E Aerospace review her Recommendation and advise her of their decision on the claim.

81.    In an email response on April 16, 2015, Ms. Sealey confirmed her receipt of Ms. Billines' Recommendation. She advised that she had sent it to B/E Aerospace's "internal legal" department to review and would contact her shortly once she had "confirmation from legal."

82.    After several days and without having received the STD decision, Mr. Kukula's counsel sent a letter dated April 29, 2015 to Prudential and B/E Aerospace following up on the Final Denial and requesting the "separate correspondence" relating to his STD claim, which remained at that time outstanding. Mr. Kukula's counsel commented that it was unclear as to why Prudential would have issued Mr. Kukula's LTD denial prior to the decision on the STD claim especially since the denial was predicated on Mr. Kukula's failure to satisfy the requisite elimination period for his LTD claim. Mr. Kukula's counsel advised that the elimination period for Mr. Kukula's LTD claim coincided directly with the remaining duration of the STD claim. Because of these actions and other procedural errors committed throughout the claim and appeals processes, Mr. Kukula's counsel requested that B/E Aerospace intervene and review Prudential's behavior on the claim.

83.    On May 26, 2015, Ms. Sealey emailed Ms. Billines and provided a copy of B/E Aerospace's final decision as it related to its review of Mr. Kukula's STD claim. In the decision, B/E Aerospace advised Ms. Billines that "as the plan administrator of the

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

B/E Aerospace, Inc. Employee Benefit Plan (the "Plan"), [the Committee had] "approved Mr. James C. Kukula's voluntary appeal for short-term disability benefits under the Plan" following "a careful review of all information in the administrative record, including ***Prudential's findings and recommendations***." (emphasis added) Prudential was instructed to notify Mr. Kukula and to proceed with payment of his STD benefits.

84.    By virtue of its decision to reinstate Mr. Kukula's STD benefits through the maximum benefit period, B/E Aerospace rejected Ms. Billines' Recommendation and Dr. Caruso's Report and Addendum.

85.    In a letter dated May 27, 2015, Ms. Billines advised Mr. Kukula that his STD benefits has been reinstated as of April 7, 2014 and terminated effective May 1, 2014 for "reaching the maximum duration of benefits payable under the [P]lan."

86.    On June 5, 2015, B/E Aerospace issued a check to Mr. Kukula in the amount of $1,989.11. This payment purportedly reflected the STD benefits owed, after taxes.

87.    Since his last day worked, Mr. Kukula has remained Disabled under the Plan and Policy.

88.    Mr. Kukula has seen various specialists for his symptoms without relief.

89.    Mr. Kukula cannot perform the material duties of his Regular Occupation.

90.    Mr. Kukula continues to be Disabled as defined by the Plan and Policy for LTD benefits.

91.    Mr. Kukula has exhausted his administrative remedies under the Plan.

92.    Mr. Kukula satisfied all of the jurisdictional prerequisites to filing his claims, and his claims are timely before this Court.

93.    On information and belief, Mr. Kukula may be entitled to additional benefits from B/E Aerospace as a Disabled employee including, but not limited to,

-16-

health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

## COUNT I
### (Recovery of Plan Benefits)
### (Prudential & the Plan)

94.     All previous and succeeding paragraphs are incorporated by reference.

95.     The Plan is a single-employer welfare benefit plan under ERISA, 29 U.S.C. § 1002.

96.     The Plan provides LTD coverage and a promise to pay benefits until Mr. Kukula is no longer Disabled under the terms of the Plan.

97.     Mr. Kukula became Disabled in October 2013 and continues to be Disabled. Due to his medical conditions and the supporting medical evidence, Mr. Kukula would not be able to reliably perform his Regular Occupation in a satisfactory manner. He has claimed the LTD benefits under the Plan to which he is entitled.

98.     Mr. Kukula reasonably expected that his conditions met the requirements of Disability as defined by the Plan, and that he would receive benefits under the Plan until he was no longer Disabled or until his SSNRA.

99.     Despite the coverage of Mr. Kukula's Disability, Prudential improperly denied Mr. Kukula's LTD benefits in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

100.    Prudential's determination that Mr. Kukula was not entitled to LTD benefits was influenced by an improper conflict of interest. Mr. Kukula is informed and believes that Prudential denied Mr. Kukula's claim to avoid liability on the LTD claim.

101.    Prudential's structural conflict of interest manifests in the form of "flight paths;" instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Kukula is informed and believes that Prudential makes claims decisions based on the claims resources and financial risk it faces on

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

certain claims.  Mr. Kukula's claim was designated early on in Prudential's claims process as a "Flight Path 4" claim by Prudential employees, including Dawn Trudelle and Chris Riggott. Despite several requests for clarification, and despite its clear relevance to Prudential's handling of Mr. Kukula's claim, Prudential has refused to disclose relevant documents related to its "flight path" designations.

102.    On information and belief, Prudential's employees were financially incentivized to deny Mr. Kukula's claim for benefits. Mr. Kukula is informed and believes that Prudential incentivizes its employees to "manage" claims in Prudential's best interests, including but not limited to his claim. Prudential's flight path arrangement is a breach of fiduciary duty requiring appropriate equitable relief following discovery on the meaning of "flight paths" as it relates to Mr. Kukula's claims handling.

103.    In denying his claim for LTD benefits, Prudential ignored credible medical evidence, which supported his eligibility for benefits. Prudential disregarded critical medical records from Mr. Kukula's treating providers as well as other relevant information regarding his symptoms, his medication intolerance and side effects, and his difficulties with activities of daily living.

104.    Given Mr. Kukula's worsening health issues, he cannot engage in his Regular Occupation.

105.    Prudential acted arbitrarily and capriciously in evaluating Mr. Kukula's claim. It selectively reviewed his medical records, unreasonably disregarded supporting documentation during the appeals processes, and failed to procure necessary medical reviews by qualified reviewers, both internally and externally.

106.    Dr. Caruso intentionally misstated the medical evidence and the assessments of Mr. Kukula's treating providers.

107.    Dr. Caruso and Prudential arbitrarily reached their opinions based on insufficient evidence or investigation. They did not personally evaluate Mr. Kukula nor did they perform their due diligence with respect to getting proper clarification from Mr.

Kukula's treating providers. In fact, no outreach was made to his providers, even where there was disagreement regarding his functionality.

108.    Prudential and Dr. Caruso cherry-picked Mr. Kukula's medical records to create a selective and incomplete rendition of Mr. Kukula's medical history.

109.    Prudential improperly failed to consider Mr. Kukula's subjective complaints, as well as the side effects of his medications, in determining whether he was Disabled under the Plan. Mr. Kukula's complaints were credible and accepted by his treating physicians. Prudential has not articulated compelling reasons for discounting his subjective complaints.

110.    Prudential failed to explain why it credited Dr. Caruso's opinions over Mr. Kukula's treating physicians. Prudential unreasonably relied on Dr. Caruso's Report and Addendum when it knew he had conducted inadequate and biased reviews.

111.    Ms. Pack and Dr. Caruso did not have the requisite knowledge, experience or training to opine on Mr. Kukula's medical conditions or ability to work and should not have been considered over the weight of Mr. Kukula's treating providers.

112.    Prudential unreasonably credited unreliable evidence over reliable evidence in its administration and review of Mr. Kukula's claims, making its determination contrary to the clear weight of the medical evidence.

113.    Prudential deliberately conducted biased investigations. It avoided and unreasonably failed to review all of the medical evidence fully and fairly in an effort to avoid financial liability on his claim.

114.    Prudential used personnel and reviewers who lacked adequate training and experience to evaluate Mr. Kukula's claim.

115.    Prudential engrafted additional requirements onto the Policy and Plan that were not contemplated by the parties or required by the Policy and Plan, including but not limited to its requirement for "objective" evidence. Prudential rejected Mr. Kukula's medical records based on his "self-reported complaints." However, the Plan and Policy

-19-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

does not have an objective medical evidence requirement. There is no exclusion or limitation for self reported symptoms. Even when Mr. Kukula presented objective medical evidence, Prudential unreasonably ignored it.

116.   Prudential produced incomplete claims procedure guidelines and failed to indicate which procedures were relied upon in its denial of Mr. Kukula's benefits.

117.   Because of Prudential's improper conduct, Mr. Kukula was denied a full and fair review of his claim.

118.   Mr. Kukula is informed and believes Prudential managed his claim with the intent to deny his LTD benefits. The record supports that Prudential placed its financial interests above Mr. Kukula's best interests in administering his claim.

119.   Prudential's bad faith and structural conflict is also evidenced in part by its many procedural irregularities. Prudential's procedural irregularities include but are not limited to: behaving as an adversary bent on denying his claim; impermissibly "cherry picking" only evidence favorable to Prudential from Mr. Kukula's file; failing to credit Mr. Kukula's subjective complaints and improperly demanding objective evidence; allowing the same appeals analyst (Ms. Billines) and physician reviewer (Dr. Caruso) to review Mr. Kukula's First and Second Appeals; and making a determination regarding Mr. Kukula's eligibility for LTD benefits prior to deciding his eligibility for STD benefits.

120.   Prudential provided Dr. Caruso with its internal notes, which was a procedural violation of ERISA. It did nothing to insulate the voluntary, appeal process from the first appeal process and used the same appeals analyst and physician reviewer throughout Mr. Kukula's administrative appeals in violation of ERISA. *See 29* C.F.R. 2560.503-1(h)(3)(ii)(h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

1   adverse benefit determination that is the subject of the appeal, nor the subordinate of

2   such individual.").

3           121.   As a practice, Prudential allows the same appeals analyst and physician

4   reviewer to consider and review the Second Appeal. This practice is codified in

5   Prudential's internal 2015 Group Disability Memorandum and practically allows its

6   appeals analysts to review their own work:

7

8           The voluntary appeal will also be assigned to the ARU [Appeals Review Unit],
            and may be determined by the ARU member who reviewed and determined the
9           mandatory appeal or another ARU member. If a medical professional is required
            to review medical information as part of the voluntary appeal, then that review
10          may be performed by the same medical professional who reviewed the mandatory
11          appeal…

12          122.   In the event that B/E Aerospace properly delegated Prudential with

13  discretionary authority, Prudential's numerous procedural errors rise to the level of a

14  "wholesale and flagrant" violation of ERISA, entitling Mr. Kukula to *de novo* review

15  with a bench trial on the record.

16          123.   If Prudential is entitled to review under an abuse of discretion standard,

17  this Court should review Prudential's decision with heavy skepticism, because there is

18  ample evidence of Prudential's malice, self-dealing, and biased claims handling as a

19  result of its conflicted status.

20          124.   On information and belief, Prudential has not established any safeguards to

21  insulate its decision-making process against its significant structural conflict of interest.

22          125.   Mr. Kukula has afforded Prudential every opportunity to act prudently and

23  to fairly consider his claim but instead, Prudential pursued a predetermined flight path to

24  deny Mr. Kukula's claim, regardless of the medical evidence provided on appeal.

25          126.   Pursuant to the coverage provided under the Plan and under ERISA 29

26  U.S.C. § 1132(a)(1)(B), Mr. Kukula is entitled to recover all benefits due under the

27  terms of the Plan, and to enforce his rights under the Plan.

28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

127.   Mr. Kukula is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before his benefits were wrongfully denied.

128.   Pursuant to 29 U.S.C. § 1132(g), Mr. Kukula is entitled to recover his attorneys' fees and costs incurred herein from Prudential.

129.   Mr. Kukula is also entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

**COUNT II**
**(Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(3))**
**(Prudential & the Committee)**

130.   All previous paragraphs are incorporated by reference.

131.   Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or to obtain other appropriate equitable relief" to redress violations of ERISA or the plan.

132.   Under ERISA, a fiduciary owes a special duty of loyalty to the Plan and its Participants. Under 29 U.S.C. § 1104(a)(1)(A), "a fiduciary shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries."

133.   ERISA also requires a fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aim." 29 U.S.C. § 1104(a)(1)(B).

134.   Prudential owed fiduciary duties to Mr. Kukula, and breached those duties by acting directly against Mr. Kukula's interests for its own gain. Prudential failed to administer the Plan prudently and in Mr. Kukula's best interests. It failed to present the medical facts accurately and failed to provide a fair and reasonable evaluation, which

-22-

considered all available medical evidence, both objective and subjective, that supported impairment.

135.   On information and belief, Prudential's conduct was motivated by financial considerations, caused by its structural conflict of interest as both decision maker and payer of Mr. Kukula's LTD benefits. Prudential has failed to produce any evidence that it protected Mr. Kukula from its conflict and instead intentionally withheld information that would have otherwise revealed the depth of its self-interested conduct. This includes information regarding its flight path designations, which is considered relevant under ERISA.

136.   Prudential was unjustly enriched as a result of its breach of fiduciary duty violations to Mr. Kukula, because it wrongfully withheld benefits for its own profit.

137.   For Prudential's conduct, Mr. Kukula is entitled to equitable relief, which could take the form of injunctive or mandamus relief. This Court could enjoin Prudential from employing and/or relying on medical records reviews to determine a claimant's functionality, where a claimant's functionality is in dispute and the physician consultant had neither examined nor contacted the claimant's treating providers for clarification. The Court could also enjoin and/or preclude Prudential from using the same appeals analyst and/or physician consultant for both the first and second appeals, which was the case with Mr. Kukula's claim. It could also enjoin the same analyst from making decisions on both the STD and LTD claims, where the claimant's transition to LTD is imminent. Lastly, the Court could enjoin Prudential from relying on medical opinions that are outside the scope of that reviewer's knowledge, experience, and specialty. For instance, Dr. Caruso, is an occupational medicine physician.  He does not have specialty training or certification in neurology, yet was deemed more credible than Mr. Kukula's treating providers.

138.   Prudential owed a duty of loyalty to Mr. Kukula but instead acted with bad faith, which constitutes a violation of its fiduciary duty. Mr. Kukula is informed and

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

believes that Prudential managed his claim with the intent to deny his claim in order to avoid financial liability. The duty of loyalty prohibits Prudential from favoring its own interests over Mr. Kukula.

139.    On information and belief, Prudential does not have proper safeguards to ensure that its focus on profitability does not affect how its employees handle, evaluate, and assess claims.

140.    On information and belief, as an institution, Prudential uses claim payment reduction goals and cost containment measures as a method of profitmaking for the company. In doing so, Prudential unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion to attain its numerical reduction goals. Prudential's cost containment measures are consistent with and part of a corporate-wide plan and scheme.

141.    On information and belief, Prudential offers incentive or bonus programs to award end encourage employees to meet its savings and operational goals. This includes variable compensation to its claims managers, appeals analysts, and internal clinical staff.

142.    On information and belief, Prudential instructs and/or incentivizes its employees to terminate otherwise legitimate claims, including Mr. Kukula's.

143.    Under ERISA, a plan administrator and/or insurance company engages in a fiduciary act when making a determination about whether a claimant is entitled to benefits under the terms of the plan.

144.    Prudential arbitrarily and capriciously denied Mr. Kukula's benefits, which constitutes a breach of fiduciary duty.

145.    Mr. Kukula relied on the Plan to his detriment, believing that he was entitled to LTD benefits pursuant to the provisions of Policy and the Plan.

146.    In addition to injunctive and/or mandamus relief, Mr. Kukula may be found to be entitled to surcharge as a result of the actual harm he suffered. As a result of Prudential's breaches, Mr. Kukula depleted his savings and had to forego recommended

-24-

treatment including, but not limited to, Botox injections for his headaches.

147.   Surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

148.   The fact that surcharge takes the form of monetary compensation does not remove it from the scope of appropriate equitable relief.

149.   In equity, the Court could make Mr. Kukula whole following Prudential's breach and mold the relief to protect the rights of Mr. Kukula. The Court has broad discretion to fashion appropriate relief.

150.   On behalf of the Plan, this Court should enjoin Prudential as most appropriately determined upon further discovery, as well as provide other equitable relief this Court deems appropriate.

151.   As the Plan Sponsor and Administrator, B/E Aerospace retained ultimate responsibility and authority regarding the administration of the Plan and the STD and LTD Programs. Because of its continued responsibility, B/E Aerospace has a responsibility to review Prudential's behavior as a fiduciary of the Plan.

152.   Under the Service Agreement, B/E Aerospace reserved the right to conduct audits of Prudential and claims made under the Plan.  It was also required to establish "performance service levels," including but not limited to, standards for plan administration, customer service, phone service and abandonment rates, timeliness of enrollment, underwriting and claim transactions.

153.   B/E Aerospace acted imprudently by failing to oversee Prudential's claims administration. B/E Aerospace, as the Plan Administrator, knew or should have known that Prudential handled claims against the best interests of its employees and not pursuant to the Plan.

-25-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

154.    On information and belief, B/E Aerospace, as the Plan Administrator, did not periodically review Prudential's actions as a purported delegated fiduciary under the Plan.

155.    On information and belief, B/E Aerospace's failure to periodically review Prudential's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

156.    On information and belief, if B/E Aerospace did periodically review Prudential's actions as a delegated fiduciary under the Plan, then its periodic reviews were unreasonable and constituted a breach of fiduciary duty.

157.    On information and belief, B/E Aerospace is liable for Prudential's actions, because B/E Aerospace violated its fiduciary obligations by failing to protect the Plan and Plan Participants from Prudential's conflicted, unchecked and adversarial claims handling.

158.    On information and belief, B/E Aerospace knew or should have known that Prudential improperly handles claims insured under the Policy in an effort to avoid financial liability on LTD claims.

159.    ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Kukula by Defendants' breach of fiduciary duty violations. Even if Mr. Kukula were to recover the benefits due to his under 29 U.S.C. § 1132(a)(1)(B), this would not provide an adequate remedy for the injuries he sustained. Furthermore, there would be nothing precluding or estopping Prudential from engaging in the same imprudent claims practices that it has engaged in. This is especially true if Mr. Kukula's claim is remanded back down to Prudential for further proceedings regarding his eligibility for benefits.

160.    Mr. Kukula is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches committed by any agents or third parties for Prudential and the Committee. This includes UDC and Dr. Caruso.

161.    Because Defendants breached their fiduciary duties, Mr. Kukula was

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

actually harmed.

162.    Pursuant to 29 U.S.C. § 1132(g), Mr. Kukula is entitled to recover his attorneys' fees and costs incurred herein from Prudential.

163.    Prudential must return any benefits or profits resulting from its breach to Mr. Kukula. By denying Mr. Kukula's claim for LTD benefits, Prudential was unjustly enriched.

164.    As a direct and proximate result of Defendants' breaches of fiduciary duty, Mr. Kukula suffered actual financial harm and incurred financial expenses.

165.    Mr. Kukula is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(3). He is entitled to enjoin any act or practice by Prudential and/or the Committee that violates ERISA or the Plan, and he is entitled to other appropriate equitable relief that is traditionally available in equity.

WHEREFORE, Mr. Kukula prays for entry of judgment against Defendants as follows:

A.    For all past LTD benefits under the terms of the Plan;

B.    For an award of prejudgment interest on his LTD benefits at the highest legal rate until paid in full; and

C.    Clarifying and determining his rights to future benefits under the terms of the Plan;

D.    For all other equitable relief that is proper as a result of Defendants' breach of fiduciary duties;

E.    For an award of Mr. Kukula's attorneys' fees and costs incurred herein;

F.    For such and further relief as the Court deems just and reasonable.

Dated this <u>19th</u> day of February, 2016.

OBER & PEKAS, PLLC

By: s/ Kristin Kalani
    Kristin Kalani
    Erin Rose Ronstadt
    Attorneys for Plaintiff

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745